IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10CV97-V

| | |
|---|---|
| MISTIE BEACH PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM** |
| v. ) | **AND ORDER** |
| ) | |
| D.R. KINCAID CHAIR CO., INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on Defendant D.R. Kincaid Chair Co. Inc.'s ("D.R. Kincaid") Motion to Dismiss Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11). For the reasons set forth below, this motion will be *denied in part* and *granted in part*.

**I. STANDARD OF REVIEW**

A Rule 12(b)(6) motion tests the legal and factual sufficiency of a complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). In reviewing a motion made under this rule, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), seen in the "light most favorable to the plaintiff." *Schatz v. Rosenberg*, 943 F.3d 485, 489 (4th Cir. 1991). However, the court is not bound to accept legal conclusions asserted by plaintiffs when reviewing such a motion. *Id*. A complaint must plead facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009). A sufficient pleading must provide

more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Papasan v. Allain,* 478 U.S. 265, 268 (1986). *Iqbal* and *Twombly* have unquestionably heightened the standard of review for motions to dismiss beyond the "no set of facts" standard, *see generally Conley v. Gibson*, 355 U.S. 41 (1957), nevertheless, a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510-15 (2002). In other words, while the standard required to state a claim in the pleadings stage of a civil action was clearly transformed by *Iqbal* and *Twombly*, the law has not transmuted the 12(b)(6) procedural device into summary judgment. So long as a complaint establishes a plausible legal and factual basis for each of the claims contained therein, the claims will stand.

## II. STATEMENT OF FACTS

For the express purposes of this motion, the following facts are presented in the light most favorable to the non-moving party, Plaintiff Mistie Beach Parker ("Parker"). *Schatz,* 943 F.3d at 489. D.R. Kincaid manufactures and upholsters furniture. Parker began her employment with D.R. Kincaid in September 2007 as a Quality Control Inspector. At this time, the company also employed Mr. Kenny Avery ("Avery") and Mr. Clyde "Billy" Hendrix ("Hendrix"). Beginning around October 2007, Avery and Hendrix began subjecting plaintiff to "vile, nasty and unwanted sexual comments and gestures" which continued over the course of her employment on an almost daily basis. (Am. Compl. ¶ 10). Examples of this alleged conduct include sexualized references to Parker's breasts and posterior, explicit solicitations for oral sex and intercourse on the company's premises, grabbing Parker and attempting to pull her into an isolated work-room full of furniture padding, leering, angry retorts to Parker's refusal to engage in sexual activity,

2

and licking the glass window of an office while looking at Parker and other female employees, among other allegations. (Am. Compl. 3-4). It is also alleged that Avery and Hendrix consumed alcohol and illicit prescription drugs during the work day, at which times the offensiveness of their actions increased. (Am. Compl. ¶¶ 18-20). On or around December 18, 2008, Hendrix became intoxicated and engaged in a physical altercation with another employee during which an upholstery staple gun was thrown. Parker feared for her safety during this fight. (Am. Compl. ¶ 26).

Parker complained to management after each incident. (Am. Compl ¶ 11). She frequently ate lunch with managers and owners, including Brenda Kincaid, and discussed the men's conduct during these meetings. (Am. Compl. ¶ 13). The human resources manager, Angie Laney, was informed of the above described conduct and was often present when Parker discussed the issues with Brenda Kincaid, an owner. (Am. Compl. ¶ 23). Furthermore, some of the alleged conduct occurred in the presence of the aforementioned invidividuals. (Am. Compl. ¶¶ 16-21). Based on her communications with Management, Parker alleges that D.R. Kincaid had knowledge of Hendrix's violent conduct. (Am. Compl. ¶ 28). Avery and Hendrix were frequently fired for their actions, but were, each time, rehired. Avery went through this cycle at least seven times (Am. Compl. ¶ 32), and Hendrix twice. (Am. Compl. ¶ 33). D.R. Kincaid allegedly kept Hendrix working because the company could not get anyone else with his expertise to work for the same wage. (Am. Compl. ¶ 14). Aside from the repeated non-permanent terminations, Parker alleges that management took no actions to curtail the behavior of these two employees. (Am. Compl. ¶ 21).

Parker went to the Emergency Room in 2008 "as the result of the inappropriate sexual conduct she was subjected to on the job." (Am. Compl. ¶ 30). Subsequently, she was sent to the Foothills Mental Health Center and received treatment for "Severe mental anguish and anxiety." *Id.* Parker alleges that the working environment caused her to experience hair loss, weight loss, acne outbreaks, stress and anxiety. (Am. Compl. ¶ 61). She alleges that her physician told her that some of these symptoms were a result of her work-related stress. (Am. Compl. ¶ 31).

In 2008, Avery's employment was terminated because he was intoxicated at work. After his termination he applied for unemployment benefits. D.R. Kincaid challenged Avery's eligibility for unemployment benefits and, in so doing, requested that Parker testify in a telephone hearing held by the Employment Security Commission to determine his eligibility. During the hearing, Parker gave a statement about Avery's "sexual harassment towards her. . . ." (Am. Compl. ¶ 37). On or around January 5, 2009—after the telephone hearing—D.R. Kincaid rehired Avery. Parker arrived at work on January 6, 2009 and saw that Avery was at the facility. Avery's work was in close proximity to Parker's, and she became upset that she would have to work with him. (Am. Compl. ¶ 40). Earlier that morning, Avery had "started telling other employees" about the Employment Security Commission hearing during which Parker testified that he had sexually harassed her. During a 9:00 AM break Parker was informed by Mr. Daniel Effler, an upholsterer at the company, that Avery told him "[Parker] hasn't seen sexual harassment yet." (Am. Compl. ¶ 44). Having seen violence in the workplace, Parker informed the company that she was "leaving because she did not feel safe or comfortable working in that environment with Kenny Avery" (Am. Compl. ¶ 45). Parker alleges she was forced to resign her

position as a result of fear that Avery would resume sexually inappropriate behavior and out "of fear for her personal safety." (Am. Compl. ¶ 46).

Before bringing this civil action, Parker filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination. (Am. Compl. ¶ 77). The EEOC issued a right to sue letter to Parker, who filed this action within ninety days of receiving the letter. *Id.* Parker has thereby exhausted available administrative remedies under Title VII.

### III. ANALYSIS

On July 26, 2010, under the authority of 28 U.S.C. § 1441(a), D.R. Kincaid Removed this case from the Superior Court of Caldwell County, North Carolina, situated in this federal judicial district. Parker's allegations include violations of Title VII, a federal anti-discrimination statute—which under the Congressional grant of authority in 28 U.S.C. § 1331—fall within this Court's original jurisdiction. The complaint also alleges claims under North Carolina law. Because these claims can be joined with the Title VII federal questions, this Court will address all issues contained in Parker's filings pursuant to 28 U.S.C. § 1441(c).

On August 27, 2010, Parker filed a First Amended Complaint (Doc. 7). It reveals claims for (1) negligent infliction of emotional distress; (2) negligent retention and supervision; (3) constructive discharge pursuant to N.C. Gen. Stat. § 143-442; (4) constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"); (5) hostile work environment under Title VII; and (6) punitive damages stemming from the Title VII and state law claims. D.R. Kincaid's instant Motion to Dismiss asserts that none of these claims are

properly stated and petitions the Court to dismiss the Amended Complaint in its entirety. (Doc. 11).

**A. Negligent Infliction of Emotional Distress ("NIED")**

Parker's NIED claim arises under North Carolina law, which provides the statutory and common-law background for this analysis. "[T]o state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress ... and (3) the conduct did in fact cause the plaintiff severe emotional distress." *McAllister v. Ha*, 347 N.C. 638, 645 (1998) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.,* 327 N.C. 283 (1990)).

In seeking dismissal of this claim, D.R. Kincaid argues that the complaint establishes neither "severe emotional distress" nor that is was reasonably foreseeable to result from the defendant's conduct. D.R. Kincaid argues that, to satisfy the severe emotional distress element of a claim for NIED, a plaintiff must plead the existence of a diagnosable condition. The North Carolina Supreme court has held that, "[i]n this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson,* 327 N.C. at 304-05; *see also Strickland v. Jewell,* 562 F. Supp. 2d 661, 674 (M.D.N.C. 2007) (Doc. 12 4). Parker's allegations satisfy this element. The Amended complaint states that, in response to the inappropriate sexual conduct she was subjected to in the workplace, she visited the Emergency Room where she was sent to a mental health facility for evaluation and treatment

for mental anguish and anxiety (Am. Compl. ¶ 30). Furthermore, the Amended Complaint states that stress resulting from the alleged discrimination necessitated use of sleeping pills (Am. Compl. ¶ 61), and that in consultations with her physician, she was told there was a correlation between some of her symptoms—including hair loss, weight loss, acne outbreaks, and heightened anxiety—and her work related allegations (Am. Compl. ¶ 31). These allegations render the existence of severe emotional distress plausible. Taking them as true, further discovery on this set of pleaded facts may establish that Parker's alleged severe emotional distress was a diagnosable medical condition. Thus, in the light most favorable to Parker, this element satisfies the pleading standard under *Iqbal* and *Twombly*.

In arguing that the complaint fails to allege a sufficient level of severe emotional distress, D.R. Kincaid cites cases that were decided at summary judgment—a stage where Fed. R. Civ. P. 56(c) allows judicial decisions to be rendered in the face of a more complete evidentiary record. [1] At this early stage in a civil action, however, this Court is not prepared to conclude that, as a matter of law, Parker's specific health-related allegations do not constitute severe emotional distress.

D.R. Kincaid further asserts that the Amended Complaint does not allege facts which plausibly suggest that any severe emotional distress was reasonably foreseeable. In support of this assertion, D.R. Kincaid claims that Parker has only made a conclusory allegation on point

---

[1] See *Strickland v. Jewell*, 562 F. Supp. 2 61 (M.D.N.C. 2007) (decided at summary judgment where the court found the plaintiff did not adequately support his allegations of difficulty sleeping, decreased appetite, increased stress and fatigue to establish severe emotional distress); *Webb v. Starbucks Corp.,* 2008 WL 4891106 (W.D.N.C. 2008)(decided at summary judgment where records before the court revealed that plaintiff suffered the same mental conditions before and after the alleged workplace incident); *Pacheco v. Rogers & Breece, Inc.,* 157 N.C. App. 445 (2003)(decided at summary judgment where plaintiff failed to offer evidence showing the occurrence of severe emotional distress).

(Am. Compl. ¶ 62). Under the *Iqbal* and *Twombly* pleading standards, D.R. Kincaid asserts that such allegations are insufficient to survive a Motion to Dismiss. A conclusory statement is one which offers a conclusion absent any predicate or foundation in support thereof. The Federal Rules of Civil Procedure require parties to state claims or defenses in "numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b). Thus, in isolation, almost any paragraph in a pleading may be deemed conclusory. However, the Rules further admonish that "pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e), a position that the Supreme Court has maintained while simultaneously raising the standard of review for 12(b)(6) Motions to Dismiss. *See Twombly,* 550 U.S. at 557 (contextualizing the establishment of a new 12(b)(6) pleading standard as intending to prevent plaintiffs with largely groundless claims from wasting judicial, private, and public resources.)

D.R. Kincaid's position that the element of reasonable foreseeability is pleaded in a merely conclusory fashion fails to view the Amended Complaint in its entirety. The document amply supports a plausible finding of reasonable foreseeability. Parker alleges that she frequently, and in various situations, complained about her sexually hostile working conditions to the owner, the human resources manager and the sewing supervisor—many of whom also witnessed instances of alleged misconduct. (Am. Compl. ¶¶ 11, 13, 14). The Amended Complaint further establishes that D.R. Kincaid possessed awareness of the effects that the allegedly offensive conduct had on Parker because she complained on a regular basis and testified about those effects during the unemployment benefits hearing—which included the participation of D.R. Kincaid management. (Am. Compl. ¶ 70). Furthermore, as the Supreme Court of North Carolina has observed, "[q]uestions of foreseeability and proximate cause must

be determined under all the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury." *McAllister*, 347 N.C. at 646. For the purposes of stating a claim upon which relief may be granted, this Court finds that Parker has sufficiently plead the element of reasonable foreseeability for NIED. Thus, Parker has plausibly stated the requisite elements for NIED and D.R. Kincaid's Motion to Dismiss will be denied as to this claim.

**B. Negligent Retention and Supervision**

North Carolina law recognizes a claim against an employer for negligence in employing or retaining an employee whose wrongful conduct injures another. *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 494 (1986). To state a claim for negligent supervision or retention, "a plaintiff must allege that the defendant's employees committed tortious acts of which the defendant had actual or constructive knowledge." *Efird v. Riley*, 342 F. Supp. 2d 413, 429 (M.D.N.C 2004) (citing *Waddle v. Sparks*, 331 N.C. 73, 87 (1992)). Additionally, to establish liability, the defendant-employer's knowledge must have existed prior to the commission of the tortious act. *Hogan* 79 N.C.App at 495 (citing *Pleasants v. Barnes*, 221 N.C. 173 (1942)). In sum, this tort claim presents two necessary elements: (1) the commission of an independent tortious act by defendant's employee, and (2) defendant's prior actual or constructive knowledge.

In the instant case, D.R. Kincaid does not challenge the actual or constructive knowledge element. Rather, the case for dismissing this claim rests on the sufficiency of the independent tort element. D.R. Kincaid avers that a Title VII claim cannot serve the independent tort requirement under North Carolina law. In *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 708-09 (E.D.N.C. 2009), Judge Dever provided a comprehensive survey of federal and state cases on this point and

9

determined that, in interpreting North Carolina law, the Fourth Circuit requires the independent tort to stand at common law. *See also McLean v. Patten Communities, Inc.* 332 F.3d 714, 720 (4th Cir. 2003). This Court agrees. "By definition, the alleged violations of Title VII … are not common-law torts." *Jackson,* 608 F. Supp. 2d at 708. Under the controlling legal framework, Parker's Title VII claims cannot support the independent tort requirement for negligent retention or supervision. However, as determined above, Parker's complaint properly states a claim for NIED—alleging that D.R. Kincaid's employees' actions caused her severe emotional distress. In North Carolina NIED is a common law tort, and can serve the independent tort requirement for the instant cause of action. *See e.g. Guthrie v. Conroy*, 152 N.C.App. 15, 20 (2002). For the purposes of stating a claim upon which relief can be granted, Parker's Amended Complaint offers both legal and factual support to a plausible showing of negligent retention or supervision. Consequently, D.R. Kincaid's Motion to Dismiss will be denied as to this claim.

**C. Constructive Discharge under North Carolina Law**

D.R. Kincaid seeks dismissal of Parker's state constructive discharge claim for legal insufficiency. More specifically, the company asserts that North Carolina law does not permit a constructive discharge cause of action. The North Carolina Equal Employment Practices Act ("NCEEPA"), codified at N.C. Gen. Stat. § 143-442.1 *et seq.*, does not create specific causes of action. Rather, it provides that, "it is the public policy of this State to protect…employment without discrimination …." *Id*. In interpreting this charge, North Carolina courts "have recognized a private right of action under this "public policy" only where the alleged discrimination resulted in *termination*." *Ravan v. Forest Pharmaceuticals, Inc.,* 2009 WL 1152190 (W.D.N.C. 2009) (citing *Whitt v. Harris Teeter, Inc.*, 359 N.C. 625 (2005)) (emphasis

added). In construing the State's public policy, the Fourth Circuit has not recognized a claim under the NCEEPA absent an employee's actual termination. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (holding the NCEEPA's public policy provision does not create a private cause of action for sexual harassment absent actual termination).

Parker petitions this Court to adopt the position taken in *McHan v. Cherokee County*, 2006 WL 3694540 (W.D.N.C. Dec. 13, 2006), which determined that a claim of constructive discharge is "synonymous with a claim of wrongful discharge…based upon a theory of constructive discharge due to a public policy violation," a claim that has been allowed by the North Carolina courts. At most, the *McHan* case supports the proposition that North Carolina courts appear undecided about their view of a separate tort action for constructive discharge. In allowing a separate tort action for constructive discharge under North Carolina law, the *McHan* court carefully noted that the North Carolina Supreme Court has, at best, provided unclear direction about the legal status of such a claim—the most recent decision on point was issued *per curium* and can be interpreted with equal authority as a broad statement of the law or a narrow holding on a detailed set of facts. *McHan* at *2 (citing *Whitt v. Harris Teeter, Inc.,* 359 N.C. 625) (2005)). While this court agrees that the North Carolina courts have offered conflicting guidance on whether a constructive discharge claim can stand under the NCEEPA, the Fourth Circuit's construction of North Carolina law is binding precedent on this court. *See, e.g., Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 642 (4th Cir.1975). Therefore, pursuant to the Fourth Circuit authority discussed in the preceding paragraph, Parker's constructive discharge claims under North Carolina law will be dismissed.

**D. Title VII - Constructive Discharge**

A constructive discharge actionable under Title VII occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985); *see also Lowe v. Unifi, Inc.*, 292 F. Supp. 2d 773, 787 (M.D.N.C. 2003). Thus, in order to state a claim for constructive discharge, a plaintiff must make a plausible showing of (1) deliberateness of the employer's actions, and (2) intolerability of the working conditions. *Lowe*, 292 F. Supp. 2d at 787. D.R. Kincaid asserts that Parker's Amended Complaint fails to state either element, and the Court will address them in turn.

As to the deliberateness of the employer's actions, D.R. Kincaid asserts that Parker does not allege that any of its actions, specifically rehiring Kenny Avery, were for the "purpose of forcing her out." (Doc. 12 13). The Fourth Circuit, however, has "never required 'smoking gun' evidence." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995). In assessing deliberateness, an employer must necessarily be held to intend the reasonably foreseeable consequences of its actions. *Id.* "A plaintiff can establish the deliberateness of her employer's actions by alleging 'actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." *Lowe*, 292 F. Supp. 2d at 787 (quoting *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993)). "A plaintiff may also show that an employer acted deliberately or with intent by showing the employer's 'failure to act in the face of known intolerable conditions.'" *Bristow v. Daily Press, Inc*. 770 F.2d 1251, 1255 (4th Cir. 1985).

Read in the light most favorable to Parker, the Amended Complaint establishes the deliberateness element in that Parker's resignation was a reasonably foreseeable consequence of rehiring Avery. The Amended Complaint shows that D.R. Kincaid knew that Parker found working with Avery "offensive and intolerable." (Doc. 13 19). Demonstrating its possession of this knowledge, D.R. Kincaid asked Parker to testify at the unemployment telephone conference regarding Avery's improper sexual propensities, substance abuse, and violence. (Am. Compl. ¶¶ 35-37). Furthermore, the Amended Complaint generally establishes that Parker repeatedly informed management of her discomfort working with and around Avery and Hendrix. D.R. Kincaid asserts that Parker's resignation was not a reasonably foreseeable consequence of Avery's rehire because "she had not quit any of the other times that Avery and Hendrix had returned to work." (Doc. 12 14). Accepting, *arguendo*, that such actions would be necessary to establish reasonably foreseeability, the factual situation presented by Avery's January 2009 rehire was rendered distinct by Parker's participation in the unemployment hearing. D.R. Kincaid further asserts that Parker did not plead differential treatment because Avery's rehire affected all employees equally. (Doc. 12 13). However, the fact that Parker was asked to testify against Avery distinguishes her position from that of employees at large. This is further supported by the threats Avery allegedly made toward Parker the morning of his rehire.

Regarding the second necessary element for a Title VII constructive discharge claim, intolerability of the working conditions, D.R. Kincaid avers that the few hours that Parker spent working with Avery before her resignation cannot plausibly show that the working conditions were objectively intolerable. Parker argues in direct opposition. Additionally, she argues that the intolerability alleged in the Amended Complaint extends across the entirety of her employment,

not just the hours following Avery's rehire. "Intolerability is judged by an objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign." *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* The facts pled in the Amended Complaint establish that Avery was involved in physical altercations at the workplace, demonstrating a propensity for violence (Am. Compl. ¶ 24); that he told other employees about Parker's testimony against him the morning of his rehire (Am. Compl. ¶43); that he made threats of further sexual harassment against Parker (Am. Compl. ¶44); and that Parker stated these as the reasons for her resignation at the time of her departure. (Am. Compl. ¶ 45.) Construed in the light most favorable to Parker, these facts are sufficient, at this stage in a civil action, to establish that a reasonable person in Parker's position could or might have felt compelled to resign.

Parker has pleaded sufficient facts to plausibly demonstrate both requisite elements of a Title VII constructive discharge claim, and should be afforded the opportunity to gather and present this Court with evidence in support thereof. D.R. Kincaid's Motion to Dismiss this claim will be denied.

**E. Title VII - Hostile Work Environment**

A Title VII Hostile Work Environment Claim requires a showing of the following four elements: (1)unwelcome harassment, (2) that was based on the plaintiff's gender, (3) and sufficiently severe or pervasive so as to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer. *Lowe*, 292 F. Supp. 2d at 782 (citing *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000); *see also Ziskie v.*

*Mineta*, 547 F.3d 220, 224 (4th Cir. 2008). D.R. Kincaid asserts that Parker's Amended Complaint does not plausibly state the third or fourth elements.

D.R. Kincaid urges this Court to find that Parker has not alleged conduct which is "severe or pervasive enough to alter the condition of employment." (Doc. 12 15). The law requires a showing of severe or pervasive conduct. Thus, even if the Court were to find that the Amended Complaint was insufficient with regards to the pervasiveness of the alleged activity, the law provides that a showing of severity can also satisfy this element of the claim. *Lowe*, 292 F. Supp. 2d at 782. The Amended Complaint contains allegations of specific instances of conduct that, taken in isolation without recurrence, demonstrate the requisite level of severity for a hostile work environment. The document establishes that Parker was subjected to physical touching, which in the context of another case might stand for common law battery, frequent and direct solicitations for sexual favors, and specific derogatory comments about her body. The severity of these allegations is sufficient to satisfy the third element of a hostile work environment claim without consideration of their pervasiveness.

In opposing pervasiveness of the alleged harassment, D.R. Kincaid challenges Parker's allegations on *mathematical* grounds, asserting that her allegation of inappropriate conduct on an "almost daily basis" (Am. Compl.¶¶ 10, 11) is inconsistent with the number of instances plead in the Amended Complaint. "20 workdays per month x 16 Months…Parker does not allege even close to 320 instances of inappropriate conduct…." (Def.'s Memo in Supp. Doc. 16. 12) (parentheses omitted). This argument is without merit. It does not pass muster. It contravenes the value of the notice pleading scheme. The Amended Complaint lists numerous specific instances of inappropriate conduct, many of which are said to have recurred with great frequency. (Am.

Compl. 2-5). This Court finds that the Amended Complaint makes a sufficient showing that the alleged conduct was pervasive during the course of Parker's employment. Furthermore, the Amended Complaint asserts that these specific events are representative of the whole set of facts to be explored during discovery. Courts must analyze "whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency…whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance…." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1988). The Fourth Circuit has established a high bar in order to satisfy the severe and pervasive element, and this Court finds that Parker's Amended Complaint has clearly met it.

A Title VII hostile work environment claim also requires a basis for imputing liability to the employer. *Lowe*, 292 F. Supp. 2d at 782. As discussed under Parker's claim for Negligent Retention or Supervision, *supra*, the Amended Complaint establishes that D.R. Kincaid Company had actual or constructive knowledge of the inappropriate conduct and took no permanent actions to change those conditions.

The Amended Complaint lays sufficient foundation for the Title VII claims it presents to surpass the pleading standard established in *Iqbal* and *Twombly*. Thus, D.R. Kincaid's Motion to Dismiss this Title VII claim will be denied.

**F. Punitive Damages Claims**

Punitive Damages are not an independent cause of action—in the instant case they must be preceded by Title VII or compensatory damages liability. See 42 U.S.C. § 1981a(a)(1) (Title VII liability is a prerequisite for punitive damages; N.C. Gen. Stat. § 1D-15(a)("Punitive damages may be awarded only if the claimant proves that the defendant is liable for

compensatory damages…."). Because Parker has stated claims for NIED, negligent retention or supervision, and Title VII violations, her request for permission to seek punitive damages is facially valid. D.R. Kincaid argues that, even if Parker prevails on the merits of her allegations, the Amended Complaint does not allege facts sufficient to support an award of punitive damages under Title VII or North Carolina law (Doc. 12 9).

To recover an award of punitive damages in a Title VII claim, a plaintiff must demonstrate that the defendant engaged in aggravated conduct, and prove that defendant "engaged in a discriminatory practice…with malice or with reckless indifference to [plaintiff's] federally protected rights." *Kolstad v. ADA*, 527 U.S. 526, 536 (1999). "The terms 'malice' and 'reckless indifference' refer to the employer's knowledge that it may be acting in violation of federal law." *Olivera-Morales v. Intern. Labor Management Corp.*, 26 F.R.D. 250 (M.D.N.C. 2007). For claims rooted in North Carolina law, a plaintiff must show fraud, malice, or willful and wanton conduct to support a plausible claim for punitive damages. N.C. Gen. Stat. § 1D-15(a).

The Amended Complaint establishes that D.R. Kincaid was aware of Hendrix and Avery's repeated inappropriate conduct (Am. Compl. ¶49). The company was aware that Parker found this conduct offensive on the basis of her gender—it was frequently of a sexual nature—because Parker frequently complained to management in official and unofficial capacities. (Am. Compl. ¶¶ 21, 23). The Amended Complaint shows that Hendrix and Avery were frequently rehired after for-cause termination because "[management] could not get anyone else to do the work as cheaply as [management] could get him to do it." (Am. Compl. ¶ 14). At this early stage, these allegations sufficiently establish a plausible basis for Title VII punitive

damages on a theory of reckless indifference or state law punitive damages on a theory of willful and wanton conduct. Parker has presented allegations that, when taken as true, nudge her punitive damages claims across the threshold of plausibility. *See generally Twombly*, 550 U.S. at 555.

### IV. Conclusion and Order

Accordingly, for the foregoing reasons, the Court hereby **grants in part** and **denies in part** Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted. Plaintiff's constructive discharge claim under N.C. Gen. Stat. § 143-422.1 is legally insufficient and is dismissed. The claims for negligent infliction of emotional distress, negligent retention or supervision, Title VII constructive discharge, and Title VII hostile work environment remain before this Court.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part consistent with the terms of this Memorandum and Order. Pursuant to Fed. R. Civ. P. 12(4)(A), Defendant D.R. Kincaid Chair Co., Inc is directed to serve and file an Answer within 14 days.

Signed: August 2, 2011

Richard L. Voorhees
United States District Judge